**IN THE COURT OF APPEALS OF IOWA**

No. 24-1906
Filed December 17, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOSHUA JORDAN CROUCH,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.


        A defendant challenges the sufficiency of the evidence supporting his convictions. **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg (until withdrawal) and Mary K. Conroy, Assistant Appellate Defenders, for appellant.

        Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


        Considered without oral argument by Schumacher, P.J., and Badding and Langholz, JJ.

**BADDING, Judge.**

A collection of cameras outside a liquor store recorded Joshua Crouch swinging a baseball bat at Mario Zamora Yepez's head and knocking him to the ground with a single blow. The hit fractured Yepez's skull and left him in a coma for a week. Law enforcement identified Crouch as the assailant after reviewing videos of the attack. He was arrested and charged with attempted murder and willful injury causing serious injury. A jury found Crouch guilty as charged, rejecting his justification defense.

On appeal, Crouch challenges the sufficiency of the evidence establishing his intent and lack of justification for both crimes. We review that challenge for the correction of errors at law. *State v. Manning*, 26 N.W.3d 385, 390 (Iowa 2025). In conducting this review,

> we are highly deferential to the jury's verdict, which is binding if there is substantial evidence to support it, and view the evidence in the light most favorable to the State. Evidence is substantial if it is sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt.

*Id.* (cleaned up).

The jury was instructed that the State had to prove Crouch "specifically intended to cause" Yepez's death to find him guilty of attempted murder and that Crouch "specifically intended to cause a serious injury" to Yepez to find him guilty of willful injury causing serious injury. The jury was further instructed that "specific intent"

> means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.
> Because determining the Defendant's specific intent requires you to decide what he was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the

facts and circumstances surrounding the act to determine the Defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of his acts.

In his recitation of the facts, Crouch emphasizes his statements to the arresting officers that he did not intend to hurt or kill Yepez. But the jury could have found otherwise from the camera footage of the attack. *See State v. Howard*, 14 N.W.3d 763, 768 (Iowa Ct. App. 2024) ("How to interpret the surveillance footage and sort out witness testimony about the events leading up to the homicide was for the jury to decide—not for us to second-guess on appeal."). And it is "for the jury to decide which evidence to accept or reject." *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022).

The videos, which have no audio, show Crouch and his wife parked in their car outside a liquor store. Crouch's wife testified they had just been to an Iowa Cubs baseball game with two of their children. As the footage continues, Yepez's car enters the parking lot, driving erratically. The car pops a curb, hits a van, and then drives towards Crouch and his wife. Yepez slowly pulls his car into the parking space next to Crouch's car, at a cockeyed angle. Crouch gets out of the passenger side of his vehicle and walks over to Yepez, who is swaying back and forth, noticeably intoxicated. Crouch's wife testified that Crouch warned Yepez, "Hey, you might want to be careful." In response, she said that Yepez told Crouch, "You tell anyone, I'll fucking kill you."[1] But Crouch didn't tell law enforcement about this threat when he was first interviewed. Instead, he told the arresting officers that Yepez threatened that he had "people coming."

---

[1] There is no evidence that the two men knew each other before this encounter.

Although Crouch claimed that he was scared of Yepez—who was unarmed—the videos tell a different story. During their exchange, Crouch pats Yepez on the arm and taps his shoulder as Yepez is talking on his cell phone. Then Crouch turns and walks away, smiling. He goes to the back of his vehicle and opens the hatchback as Yepez walks towards him. Crouch pulls out a baseball bat. He told law enforcement that he gave Yepez three options: "back away from me, back away from me, back away from me." But Yepez stayed where he was. The footage then shows Crouch planting his feet in a batter's stance, drawing the wooden baseball bat back, and taking a full swing at Yepez's head. Yepez falls to the ground, unconscious. Crouch and his wife drive away, leaving Yepez motionless in the parking lot. A bystander called 911, and Yepez was transported to the hospital, where he underwent emergency surgery to remove part of his skull. The surgeon testified that it would take a "significant effort" by a "strong person and a hard swing" to cause Yepez's injuries, which included skull fractures, bleeding inside the brain, and brain swelling.

A rational trier of fact could conclude from this evidence that Crouch intended to seriously injure or kill Yepez. As the jury was instructed, "defendants will ordinarily be viewed as intending the natural and probable consequences that ordinarily follow from their voluntary acts." *State v. Bedard*, 668 N.W.2d 598, 601 (Iowa 2003). A person in Crouch's position would reasonably expect that swinging a bat at another's head—with enough force to cause skull fractures—would result in death or serious injury. *See State v. White*, No. 22-0599, 2023 WL 2396375, at *2 (Iowa Ct. App. Mar. 8, 2023) (finding that intent to cause serious injury could be inferred by the defendant swinging a baseball bat at the victim's head); *State v.*

*Alexander*, No. 12-0715, 2013 WL 535741, at *4–5 (Iowa Ct. App. Feb. 13, 2013) (finding "ample evidence" of intent to cause serious injury or death when defendant "raised his cane like a baseball bat" and swung hard at the victim's face).

The jury was also instructed that it could infer specific intent to kill from Crouch's use of a dangerous weapon following the opportunity to deliberate. *See State v. Green*, 896 N.W.2d 770, 779-82 (Iowa 2017) (discussing this permissive inference and re-affirming its use). In a special interrogatory that Crouch doesn't challenge on appeal, the jury found the baseball bat was a dangerous weapon. *See State v. Tusing*, 344 N.W.2d 253, 254 (Iowa 1984) (holding dangerousness is a question for factfinder). And the videos show that Crouch had an opportunity to deliberate as he walked away from Yepez, went to the back of his vehicle, pulled the bat out, and exchanged words with Yepez before hitting him in the head. *See Howard*, 14 N.W.3d at 769 (finding opportunity to deliberate "because Howard drew the handgun from his overalls, aimed, and shot" the victim). There was substantial evidence of Crouch's specific intent to kill or cause serious injury to Yepez.

There was also ample evidence to show that Crouch was not justified. "[T]he State bears the burden to disprove justification once properly invoked by a criminal defendant." *Id.* at 767; *accord State v. Ellison*, 985 N.W.2d 473, 479 (Iowa 2023). The jury was instructed that Crouch was

> justified in using reasonable force if [he] reasonably believed that such force was necessary to defend himself or another from any actual or imminent use of unlawful force that he reasonably believed was being or being imminently perpetrated by Mario Zamora Yepez.
> Reasonable force is only the amount of force a reasonable person would find necessary to use under the circumstances to prevent death or injury. If in the Defendant's mind the danger was

actual, real, imminent, or unavoidable, even if the Defendant was wrong in estimating it or the force necessary to repel it, the force was justified if the Defendant had a reasonable basis for his belief and responded reasonably to that belief.

See Iowa Code § 704.1. "The defense is both subjective and objective." *Howard*, 14 N.W.3d at 767.

While there was some evidence that Crouch and his wife were fearful of Yepez, the jury could have found from its review of the videos that Yepez was not a threat. *See id.* at 768 (noting "the jury could choose to believe all, some, or none of the evidence presented by" the defendant). Right before Crouch hit Yepez with the bat, Yepez was talking on his phone, looking towards the street, and swaying—likely due to his visible intoxication.[2] Viewing this evidence in the light most favorable to the State, a rational trier of fact could have found that Crouch "unreasonably escalated the confrontation" with a drunken and unarmed Yepez. *Id.* at 768 (concluding substantial evidence supported the jury's finding that when the defendant shot the victim, he used unreasonable force to respond to the victim punching him); *see also State v. McCombs*, No. 22-1422, 2024 WL 259714, at *4 (Iowa Ct. App. Jan. 24, 2024) ("McCombs responded to an unarmed person by retrieving and using a wooden baseball bat, and that escalation offers substantial evidence that McCombs was not justified."). Our conclusion is supported by Crouch's quick exit from the scene and failure to call 911 or render medical assistance—"all of which are inconsistent with an honest self-defense claim." *State v. Cruz*, No. 24-0168, 2025 WL 707158, at *4 (Iowa Ct. App. Mar. 5, 2025); *accord State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993).

---

[2] Yepez's alcohol level at the hospital was .240.

Because substantial evidence supports the jury's verdicts, we affirm his convictions for attempted murder and willful injury causing serious injury.

**AFFIRMED.**